SHAREEF S. FARAG, SBN 251650
NICHOLAS D. POPER, SBN 293900
MATTHEW P. EATON, SBN 353597
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859
*Email:* *sfarag@bakerlaw.com*
*npoper@bakerlaw.com*
*meaton@bakerlaw.com*

*Attorneys for Defendants*
ECOLAB INC. and ECOLAB USA INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JOSE RUIZ RODRIGUEZ, on behalf of himself and others similarly situated,

Plaintiff,

v.

ECOLAB INC.; ECOLAB USA INC.; and DOES 1 to 100, inclusive,

Defendants.

Case No. 2:26-cv-09468

*[Los Angeles County Superior Court Case No. 26STCV15297]*

**DEFENDANTS ECOLAB INC. AND ECOLAB USA INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

*[Filed concurrently with Civil Cover Sheet and Certification and Notice of Interested Parties]*

Complaint Filed: May 13, 2026

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants ECOLAB INC. and ECOLAB USA INC. ("Defendants"), hereby remove the above-captioned action filed by Plaintiff JOSE RUIZ RODRIGUEZ ("Plaintiff") in the Superior Court of the State of California, in and for the County of Los Angeles (the "State Court"), Case No. 26STCV15297, to the United States District Court for the Central District of California.

## JURISDICTION AND VENUE

1. This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under 28 U.S.C. §§ 1441 and 1446 because it is a civil action that satisfies the requirements stated in the Class Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C. § 1332(d).

2. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Specifically, the United States District Court for the Central District of California embraces Los Angeles County. Thus, this Court is the district court to which this case is properly removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## PROCEDURAL BACKGROUND

3. On May 13, 2026, Plaintiff filed a putative class action complaint ("Complaint") against Defendants Ecolab Inc. and Ecolab USA Inc. in the State Court, styled as *Jose Ruiz Rodriguez, on behalf of himself and others similarly situated, v. Ecolab Inc., et al.*, Case No. 26STCV15297 (the "State Court Action"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

4. On May 21, 2026, each of the Defendants was served with a copy of the Summons and Complaint. Attached as **Exhibit B** are true and correct copies of the Proofs of Service of Summons and Complaint.

5. On June 8, 2026, Plaintiff served Defendants with Plaintiff's Notice of Minute Order Dated May 28 2026, and Initial Status Conference Order, a true and correct copy of which is attached as **Exhibit C**.

6. **Exhibits A and C** constitute true and correct copies of all process, pleadings, and orders served on the Defendants in the State Court Action.

## TIMELINESS OF REMOVAL

7. This Removal is timely under CAFA. The Ninth Circuit has held and clarified that removal is timely under CAFA at any time so long as (1) the face of the complaint does not plainly allege all elements needed for CAFA jurisdiction (including the amount in controversy); and (2) plaintiffs have not served some other "paper" that concedes all elements needed for CAFA jurisdiction. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant").[1]

[1] *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth*) ("We also recently held in *Roth v. CHA Hollywood Med. Ctr., L.P.*, that the two 30-day periods are not the exclusive periods for removal . . . . In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time."); *Taylor v. Cox Commc'ns California, LLC*, 673 F. App'x 734, 735 (9th Cir. 2016) ("We also hold that Defendants' second Notice of Removal was timely. 'A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.'"); *Jackson v. Compass Grp. USA, Inc.*, 2019 WL 3493991, at *3 (C.D. Cal. July 31, 2019) (finding removal based on traditional diversity jurisdiction was timely where the complaint did not indicate on its face that more than $75,000 was in controversy and, thus, the thirty-day removal clock did not start); *Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *2-4 (C.D. Cal. May 27, 2015) (same).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

8. Here, the Complaint does not plainly allege all elements needed for removal under CAFA, and Plaintiff has not served some other "paper" that concedes all elements needed for such removal. Therefore, this Removal is timely pursuant to 28 U.S.C. § 1446(b)(3) and Ninth Circuit precedent.

## CAFA JURISDICTION

9. Basis of Original Jurisdiction. This Court has original jurisdiction of this action under CAFA. 28 U.S.C. § 1332(d)(2) and (5) provide that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000. Section 1332(d)(2) further provides that any member of the putative class must be a citizen of a state different from any defendant.

10. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d) because it is a civil action filed as a class action involving more than 100 members; the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, based on the allegations that Plaintiff set forth in the Complaint; Plaintiff and at least one of the Defendants are citizens of different states; and no Defendant is a state, state official, or government entity.

## DIVERSITY OF CITIZENSHIP

11. CAFA's diversity requirement is satisfied when any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). The citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F. 2d 790, 794 (9th Cir. 1986). In the Ninth Circuit, "[a] party's allegation of minimal diversity may be based on 'information and belief.' [citations omitted] The pleading 'need not contain evidentiary submissions.'" *Ehrman v. Cox Communications*, 932 F.3d 1223, 1227 (9th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014)).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

12. Plaintiff's Citizenship. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state."); *Adams v. West Marine Products, Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020) ("To be a citizen of a state, a natural person must first be a citizen of the United States. . . . [Her] state citizenship is then determined by her state of domicile."). "One's domicile is her permanent home—that is, where (i) she resides, (ii) with the intention to remain or to which she intends to return." *Adams*, 958 F.3d at 1221 (internal quotation marks omitted). Residence is prima facie evidence of domicile. *State Farm Mutual Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) ("It is a longstanding principle that the place where a person lives is taken to be his domicile until facts adduced establish the contrary.") (internal quotation marks omitted).

13. As alleged in the Complaint, "[a]t all times mentioned herein, the currently named Plaintiff is and was a resident of California." Complaint, ¶ 3. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Because residence is prima facie evidence of domicile (*Dyer*, 19 F. 3d at 520), Plaintiff is a citizen of the State of California.

14. Defendants Ecolab Inc. and Ecolab USA Inc.'s Citizenship. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

15. At the time this action commenced, both Ecolab Inc. and Ecolab USA Inc. were, and still are, corporations formed in and incorporated under the laws of Delaware. Pursuant to the *Hertz* nerve center test, both Ecolab Inc.'s and Ecolab USA Inc.'s principal place of business and headquarters are located in Saint Paul, Minnesota, where the majority of each of their officers direct, control, and coordinate their corporate activities. Thus, both Ecolab Inc. and Ecolab USA Inc. are citizens of Delaware and Minnesota for purposes of removal.

16. Doe Defendants. Although Plaintiff has also named fictitious defendants "DOES 1 to 100," the presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (finding that unnamed defendants need not join in the removal petition). Thus, the existence of Doe Defendants 1 to 100 does not deprive this Court of jurisdiction.

17. Minimal Diversity. Defendants have met the minimal diversity of citizenship required by CAFA, inasmuch as Plaintiff (who is a member of the putative class) is a citizen of California and Defendants are citizens of Delaware and Minnesota. *See* 28 U.S.C. § 1332(d)(2).

18. Size of the Putative Class. CAFA provides that district courts shall have jurisdiction over actions where the number of members of all proposed plaintiff classes in the aggregate is at least 100. *See* 28 U.S.C. § 1332(d)(5). Here, Plaintiff purports to bring his class claims on behalf of multiple classes consisting of all current and former hourly non-exempt employees employed by Defendants in California during the relevant limitations periods, including both direct employees and temporary employees employed through staffing agencies. Complaint, ¶ 43. To estimate the size of the putative class, Defendants use the longest class period alleged in the Complaint, which is four years prior to the filing of the initial Complaint

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

through the present, or May 13, 2022 to present (the "Relevant Time Period"). *Id.*; *see Cortez v. Purolator Air Filtration* Products Co., 23 Cal.4th 163, 179 (2000) (holding that an action to recover wages under the California Business and Professions Code is subject to the four-year period of limitations).

19. During the Relevant Time Period, Defendants collectively employed approximately 1,165 current and former non-exempt or hourly paid employees in California. Therefore, per the Complaint allegations, the putative class size is at least 1,165.

**AMOUNT IN CONTROVERSY UNDER CAFA**

20. Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement. Here, that amount is $5,000,000, in the aggregate. *See, e.g.*, *Cohn v. PetsMart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002). Defendants "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 94 (holding that defendants need not submit "evidence" establishing CAFA jurisdiction in their removal papers; rather, defendants only need to provide "a short and plain statement of the grounds for removal"). The amount in controversy is simply "the amount at stake in the underlying litigation" and "does not mean likely or probable liability; rather, it refers to *possible* liability." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (citing *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)). In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

21. Here, Plaintiff does not specifically allege any amount of damages in the Complaint. Therefore, Defendants "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 84 (holding defendants need not submit "evidence" establishing CAFA





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

jurisdiction in their removal papers; rather, defendants only need to provide "a short and plain statement of the grounds for removal"); *see also Al-Najjar v. Kindred Healthcare Operating, Inc.*, No. CV 17-6166 PSG (FFMx), 2017 WL 4862067, at *2 (C.D. Cal. Oct. 26, 2017).

22. Plaintiff's Complaint pleads causes of action for, *inter alia*, failure to pay all minimum wages, failure to pay all overtime wages, meal break violations, rest break violations, failure to provide complete and accurate wage statements, failure to pay all wages and final paychecks due upon separation of employment, and unfair competition in violation of California Business and Professions Code § 17200 *et seq*. *See generally* Complaint. Plaintiff seeks recovery of monetary damages, including unpaid minimum, overtime, and premium wages, liquidated damages, statutory penalties, restitution, injunctive relief, pre-judgment and post-judgment interest, costs of suit, attorneys' fees, and "such other further relief, in law and/or equity, as the Court deems just or appropriate." *See* Complaint, Prayer for Relief.

23. Without conceding that Plaintiff or the putative class members are entitled to or could recover damages in the amount or manner alleged, or at all, the amount in controversy in this putative class action conservatively exceeds $5,000,000, exclusive of interest and costs.

24. <u>Claim for Failure to Pay Minimum Wages</u>. In support of his First Cause of Action for unpaid minimum wages, Plaintiff alleges, *inter alia*, that "Defendants' ***policies, practices, and/or procedures*** required Plaintiff and the Minimum Wage Class to be engaged, suffered, or permitted to work without being paid wages for all of the time in which they were subject to Defendants' control." Complaint, ¶ 48 (emphasis added); *id.* at ¶ 49 (alleging unpaid off-the-clock work before and after scheduled shifts). Thus, according to Plaintiff, because Plaintiff and the Minimum Wage Class allegedly worked off-the-clock without pay, Defendants failed to pay minimum wage for all hours worked. *Id.* ¶ 50. Accordingly, Plaintiff seeks to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

recover, on behalf of himself and the Minimum Wage Class, unpaid minimum wages, liquidated damages, interest, and attorneys' fees and costs. *Id.* at ¶ 52.

25. During the Relevant Time Period, Defendants employed 1,165 putative class members who worked a total of approximately 654,728 shifts.

26. In calculating the amount in controversy on Plaintiff's minimum wage claim, Defendants conservatively limit their calculations to *only* unpaid minimum wages. Assuming, for purposes of this removal only, that putative class members were not paid for 5 minutes of work on 50% of shifts, the amount in controversy for Plaintiff's claim for unpaid minimum wages is at least **$435,940** (calculated as: 5 minutes of unpaid minimum wage × [654,728 shifts × 50% violation rate] × $15.98 average minimum wage in effect over the Relevant Time Period[2]). This calculation is highly conservative and almost certainly significantly understates the amount placed in controversy by Plaintiff's claim given Plaintiff's unqualified allegations of daily unpaid wages. *See Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *7 (C.D. Cal. May 9, 2018) (finding that the defendant's assumption of one hour of unpaid minimum wages per week was reasonable in light of the plaintiff's allegation that the defendant had a "consistent policy of failing to pay wages"); *see also Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (holding that the defendant's assumption of one hour of unpaid minimum wages per workweek per class member was reasonable given the plaintiff's "broad allegation that [the d]efendant 'engaged in a pattern and practice of wage abuse' against [the p]laintiff and the putative class members, including 'failing to pay them for all regular and/or overtime wages earned . . . .'"); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or

---

[2] The average minimum wage rate was calculated based on the following minimum wage rates: $15.00 in 2022, $15.50 in 2023, $16.00 in 2024, $16.50 in 2025, and $16.90 per hour in 2026.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

consistent practice of violating employment laws that harmed each class member, such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week.").

27. Claim for Failure to Pay Overtime Wages. In support of his Second Cause of Action for unpaid overtime, Plaintiff alleges that "Defendants failed to pay all overtime wages to Plaintiff and the Overtime Class for their ***daily*** overtime hours worked." Complaint, ¶ 58 (emphasis added). Plaintiff further alleges that Defendants "employed policies, practices, and/or procedures" resulting in unpaid overtime, such as requiring Plaintiff and the Overtime Class to "complete off-the-clock tasks, such as servicing their assigned company vehicle, prior to clocking in for the start of their shift," "work on call, without being paid for this time," and "keep the company's cell phone on them and monitored at all times, including after Plaintiff and the Overtime Class have clocked out for the end of their shifts." *Id.* at ¶ 59. Plaintiff also alleges that, when Plaintiff and the Regular Rate Class Members earned overtime wages, "Defendants maintained a policy, practice, and/or procedure of failing to include all remuneration such as shift differentials due to working overnight, for example, when calculating Plaintiff's and Regular Rate Class Members' regular rate of pay for the purpose of paying overtime." *Id.* at ¶ 62–63.

28. Based on these allegations, Plaintiff, on behalf of himself, the Overtime Class, and the Regular Rate Class, seeks to recover the full amount of their unpaid overtime wages, interest, and attorneys' fees and costs. *Id.* at ¶ 65.

29. During the Relevant Time Period, the putative class worked a total of approximately 474,538 shifts greater than eight hours. The average hourly rate of pay among this group is approximately $24.97. Assuming, for purposes of this removal only, that putative class members were not paid for 5 minutes of overtime on 50% of shifts in excess of eight hours, the amount in controversy for this claim is approximately **$<u>740,675</u>** (calculated as: 5 minutes of overtime × [474,538 shifts over eight hours × 50% violation rate] × [$24.97 average hourly rate × 1.5 overtime



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

factor]). This calculation is conservative given the far-reaching allegations in Plaintiff's Complaint of a policy or practice of not paying *daily* overtime hours worked. *See Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019) (finding that a violation rate of two hours of unpaid overtime per workweek was reasonable in light of allegations that the violations occurred "as matters of policy and/or practice"); *see also Jimenez v. Allstate Ins. Co.*, 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (based on an allegation of "consistent" overtime work, the defendant reasonably "estimated one hour of unpaid overtime compensation per week for each putative class member.").

30. Claim for Meal Break Violations. In support of his Third Cause of Action for meal break violations, Plaintiff alleges that "Defendants employed ***policies, practices, and/or procedures*** that resulted in their failure to authorize or permit meal periods to Plaintiff and the Meal Period Class of no less than thirty (30) minutes for each five-hour period of work as required by law." Complaint, ¶ 69 (emphasis added). Plaintiff further alleges that Defendants failed to pay meal period premiums, lacking "a policy and procedure for compensating Plaintiff and the Meal Period Class with premium wages when they did not receive all legally required and legally compliant meal periods." *Id.* at ¶ 70. Also, Plaintiff claims that, when meal period premiums were paid, they failed to "include all remuneration such as shift differentials due to working overnight" and thus were not paid at putative class members' correct regular rate of compensation. *Id.* at ¶ 71.

31. Plaintiff, on behalf of himself and the putative class damages, including in an amount equal to an additional hour of pay at the regular rate of compensation for each workday that a meal break was not provided, plus pre-judgment interest. *Id.* at ¶ 74.

32. Although Defendants deny all liability, assuming, for purposes of this removal only, a 25% violation rate for missed, late, or short meal breaks, the amount in controversy for this claim is **$3,614,895** (calculated as: $24.97 average hourly rate

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

× [579,078 shifts over five hours × 25% violation rate]). Plaintiff's broad allegations of failure to provide legally compliant meal breaks reasonably justifies a violation rate of at least 25%. *See Bryant v. NCR Corporation*, 284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018) (finding reasonable a meal break violation rate of 60%—3 meal break violations a week—and a rest break violation rate of 30%—3 rest break violations a week); *see also Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019) (finding it "entirely reasonable for [the d]efendant to allege a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods" based on "pattern and practice" language in the complaint); *see also Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding allegations of "uniform policies, practices and procedures" allowed for a 100% violation rate).

33. Claim for Rest Break Violations. In support of his Fourth Cause of Action for rest break violations, Plaintiff alleges, *inter alia*, that Defendants "employed ***policies, practices, and/or procedures*** that resulted in their failure to authorize or permit all legally required and compliant rest periods to Plaintiff and the Rest Period Class." Complaint, ¶ 78 (emphasis added). Plaintiff further claims that "Defendants failed to pay Plaintiff and the Rest Period Class one (1) hour of pay at their regular rate of pay for each workday they did not receive all legally required and legally compliant rest periods." *Id.* at ¶ 79. Also, Plaintiff claims that when meal period premiums were paid, they failed to "include all remuneration such as shift differentials due to working overnight" and thus were not paid at putative class members' correct regular rate of compensation. *Id.* at ¶ 80. Plaintiff, on behalf of himself, the Rest Period Class, and the Rest Period Premium Class, seeks damages in an amount equal to an additional hour of pay at the regular rate of compensation for each workday that a rest break was not provided, plus interest. *Id.* at ¶ 83.

34. Although Defendants deny all liability, assuming, for purposes of this removal only, a 25% violation rate for non-compliant rest breaks, the amount in



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

controversy for this claim is **$<u>3,727,609</u>** (calculated as: $24.97 average hourly rate × [597,134 shifts over 3.5 hours × 25% violation rate]). This is a conservative calculation given the Complaint's broad allegations. *See Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892, at *3 (C.D. Cal. April 14, 2021) (finding assumed 25% violation rate "conservative and reasonable" because the complaint included no "limiting principle."); *see also Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) ("Courts in this Circuit … have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods.")

35. <u>Claim for Inaccurate Wage Statements</u>. In support of his Fifth Cause of Action for failure to provide accurate and itemized wage statements, Plaintiff alleges, *inter alia*, that the wage statements issued to Plaintiff and the Wage Statement Class "stated inaccurate information including, but not limited to, the number of hours worked, the gross wages earned, and the net wages earned." Complaint, ¶ 151. Further, Plaintiff states that "Defendants failed to provide accurate wage and hour statements to him and the Wage Statement Class who were subject to Defendants' control for uncompensated time and who did not receive all their earned wages (including minimum wages, overtime wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code section 226." *Id.* at ¶ 150. He further alleges that Defendants' failure to provide Plaintiff and the Wage Statement Class with accurate wage statements was "knowing and intentional" and caused injury to Plaintiff and the Wage Statement Class Members. *Id.* at ¶ 152–53.

36. Plaintiff seeks to recover penalties pursuant to Labor Code § 226, as well as costs and attorneys' fees. *Id.* at ¶ 156.

37. Labor Code § 226(e) provides an employee "suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)" to recover $50 per employee for the initial pay period in which a wage statement





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

violation occurred and $100 per employee for each violation in a subsequent pay period, not to exceed a maximum aggregate penalty of $4,000 per employee. A one-year limitations period applies to this cause of action seeking penalties. *Leitzbach v. Atlas Van Lines, Inc.*, 2017 WL 11617904, *14 (C.D. Cal. Feb. 22, 2017).

38. Based on Plaintiff's allegations, a 100% violation rate is properly applied to Plaintiff's wage statement claim, and courts in this district have routinely accepted use of a 100% violation rate based on allegations similar to Plaintiff's here. *Cavada v. Inter-Continental Hotels Group, Inc*., 2019 WL 5677846, *8 (S.D. Cal. Nov. 1, 2019) (100% violation rate was reasonable where the plaintiff alleged wage statement violations from "time to time" because since the court found one missed meal and rest period per workweek to be reasonable, "that would mean that every wage statement was inaccurate and subject to the penalties"); *Cabrera v. South Valley Almond Company, LLC,* 2021 WL 5937585*,* at *8 (E.D. Cal. Dec 16, 2021) (holding that because the court found that "it is reasonable to assume one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member[,] it follows that each of the bi-weekly wage statements . . . during that period contained an error of some sort."); *Rapisura v. BMW of North America, LLC*, 2022 WL 1557001 (E.D. Cal. May 17, 2022) ("[I]t is reasonable for defendant to assume that every wage statement for the 7,773 pay periods was inaccurate because the complaint contains a comprehensive list of possible errors the wage statements allegedly had, and the complaint states that defendant "knowingly and intentionally" failed to correct its "unlawful practices and policies." ); *Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 WL 6382049, at *6 (C.D. Cal. Dec. 6, 2018) ("[I]t is reasonable to assume a [100%] violation rate given the myriad allegations about widespread [unpaid wages] and meal period violations.").

39. During the relevant period of May 13, 2025 to the present, Defendants employed at least 791 non-exempt employees in California who were issued

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

approximately 17,582 wage statements. Accordingly, for purposes of this Removal only, the amount in controversy on Plaintiff's wage statement claim is estimated to be **$<u>879,100</u>** (calculated as: $50 penalty for each violation × 17,582 pay periods). While Plaintiff seeks to recover wage statement penalties at $50 for the initial pay period with a violation and $100 for each violation in a subsequent pay period, Defendants conservatively use the initial violation rate only for purposes of calculating the amount in controversy.

40. <u>Claim for Waiting Time Penalties</u>. In support of his Sixth Cause of Action for waiting time penalties, Plaintiff alleges, *inter alia*, that "at all relevant times within the limitations period applicable to this cause of action, Defendants maintained a ***policy or practice*** of not paying hourly employees all earned wages timely upon separation of employment" as a result of practices such as "failing to pay at least minimum wage for all time worked, overtime wages for all overtime hours worked, meal period premium wages, and/or rest period premium wages." Complaint, ¶ 160-61 (emphasis added). Plaintiff further alleges that Defendants' failure to timely pay all wages due at separation of employment was willful as Defendants "intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202." *Id.* at ¶ 161. Plaintiff seeks, on behalf of himself and the Waiting Time Class, "the full amount of their unpaid wages, continuation wages under Labor Code section 203, and interest thereon, and reasonable attorney's fees and costs under Labor Code section 218.5." *Id.* at ¶ 166.

41. Labor Code § 203 provides that a former employee who is not paid all wages owed at the time he or she is discharged or quits shall receive regular daily wages for each day he or she was not paid, for up to thirty days. Because a three-year limitations period applies to a cause of action under this section, the applicable time period is May 13, 2023 through the present. *See e.g., Gomez v. Rossi Concrete, Inc.*, 2012 WL 294616 at *3 (S.D. Cal. Jan. 31, 2012) ("The three year statute of limitations . . . applies here for waiting-time penalties.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

42. During the applicable three-year period, Defendants employed approximately 326 individuals who separated from employment with Defendants. The average hourly rate of pay for these individuals is approximately $25.31. Accordingly, the amount in controversy for this claim is **$1,980,250** (calculated as: 326 separated employees × 8 hours × 30 days × $25.31 average hourly rate of pay). Defendants' assumptions are reasonable in light of the fact that Plaintiff's waiting time penalties claim piggybacks onto his unpaid overtime, unpaid minimum wages, and meal and rest break claims, each of which assert widespread violations. *See Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018) ("[A plaintiff's] allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties."); *see also Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *6 (N.D. Cal. June 28, 2021) (finding 100 percent violation rate acceptable for waiting time penalties claim when "[p]laintiff tied her waiting period claims to her other claims, and because [d]efendant specifically accounts for only terminated employees.").

43. Attorneys' Fees. Further, Plaintiff's Complaint seeks an unspecified amount of attorneys' fees on his First, Second, Fifth, and Sixth Causes of Action asserted in the Complaint. These attorney fees may be included in determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees . . . such fees may be included in the amount in controversy."); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417-18 (9th Cir. 2018) (the amount in controversy includes all relief claimed at the time of removal to which Plaintiff would be entitled if she prevails.). Additionally, the Ninth Circuit has confirmed that future attorneys' fees must be included in an amount in controversy calculation under CAFA. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018). "[I]t is well established the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'" *Jasso v. Money Mart Express, Inc.*, 2012 WL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

699465, at *7 (N.D. Cal. Mar. 1, 2012) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

Accordingly, for purposes of this Removal only, Defendants conservatively assume that attorneys' fees in this matter would amount to at least 25% of the award of attorneys' fees on those claims in which Plaintiff seeks fees, amounting to **$1,008,991** (calculated as: 25% × $4,035,965).

44. Total Amount in Controversy. Based solely on the causes of action considered above, the class-wide amount in controversy, conservatively estimated, is at least **$12,387,460**. This showing as to the amount in controversy satisfies the standard for removal. *Dart Cherokee*, 574 U.S. at 81 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions.").

45. Based on the foregoing, the aggregate amount in controversy of Plaintiff's Complaint is as follows:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages | $435,940 |
| Unpaid Overtime Wages | $740,675 |
| Meal Break Violations | $3,614,895 |
| Rest Break Violations | $3,727,609 |
| Wage Statement Penalties | $879,100 |
| Waiting Time Penalties | $1,980,250 |
| ***Subtotal:*** | $11,378,469 |
| Attorneys' Fees: | $1,008,991 |
| **TOTAL:** | **$12,387,460** |

46. Amount in Controversy for Remaining Claims. The amount in controversy exceeds the $5,000,000 CAFA threshold, without taking into account Plaintiff's additional claims for liquidated damages, restitution, and injunctive relief (among other forms of relief not calculated above). Even though Defendants have



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

not assigned any particular amounts to these claims, assignment of any sum only further increases the amount in controversy in excess of $5,000,000.

47. Accordingly, removal of this action is proper under CAFA.

**NOTICE OF INTERESTED PARTIES**

48. Pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 7.1-1, the Ecolab Defendants are filing a Certification and Notice of Interested Parties concurrently with this Notice of Removal.

**NOTICE**

49. As required by 28 U.S.C. § 1446(d), the Ecolab Defendants are providing written notice of the filing of this Notice of Removal to all parties and are filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, in and for the County of Los Angeles.

Respectfully submitted,

Dated: August 24, 2026

**BAKER & HOSTETLER LLP**

By: *Nicholas D. Poper*
SHAREEF S. FARAG
NICHOLAS D. POPER
MATTHEW P. EATON

*Attorneys for Defendants*
ECOLAB INC. and ECOLAB USA INC.

# PROOF OF SERVICE

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1900 Avenue of the Stars, Suite 2700, Los Angeles, CA 90067. On August 24, 2026, I served a copy of the within document:

**DEFENDANTS ECOLAB INC. AND ECOLAB USA INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

| | |
|---|---|
| ☑ | **VIA EMAIL:** by transmitting via electronic mail the document(s) listed above to the email address(es) set forth below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |
| ☑ | **VIA U.S. MAIL:** by placing the documents listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |

Joseph Lavi, Esq.
Vincent C. Granberry, Esq.
Jeffrey D. Klein, Esq.
Daniel C. Keller, Esq.
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, CA 90211
Email: *jlavi@lelawfirm.com*
*vgranberry@lelawfirm.com*
*jklein@lelawfirm.com*
*dkeller@lelawfirm.com*

*Attorneys for Plaintiff*
JOSE RUIZ RODRIGUEZ

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on August 24, 2026, at Los Angeles, California.

*/s/ Andrea Gonzalez*
Andrea Gonzalez

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES